# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 11-10109 (CSS) |
| CONSTAR INTERNATIONAL INC., et ) | |
| al.,[1] ) | (Jointly Administered |
| ) | |
| ) | **Re: Docket No. 17** |
| Debtors. ) | |
| ) | |

## INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO POSTPETITION NOTE PURCHASE AGREEMENT AND OBTAIN POSTPETITION FINANCING, (B) PROVIDING ADEQUATE PROTECTION, GRANTING LIENS AND SUPERPRIORITY CLAIMS, (C) AUTHORIZING DEBTORS TO REPAY PREPETITION CREDIT AGREEMENT OBLIGATIONS, (D) MODIFYING THE AUTOMATIC STAY AND (E) SCHEDULING A FINAL HEARING

Upon the motion of the above-captioned debtors and debtors in possession (collectively,

the "Debtors"),[2] dated January 11, 2011 (the "Motion")[3], in the above-captioned cases (the

"Cases") commenced on January 11, 2011 (the "Petition Date") for interim and final orders

under sections 105, 362, 363(b), 364(c) and 364(e) of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") (1)

authorizing the Debtors to enter into postpetition note purchase agreement and obtain

---

[1] The Debtors and the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

[2] Debtor Constar International U.K. Limited is not and shall not be an Issuer under the DIP Note Purchase Agreement. Reference herein to the Debtors in their capacity as Issuers under the DIP Note Purchase Agreement shall not include Constar International U.K. Limited; provided, however, that, notwithstanding the foregoing, Constar International U.K. Limited is and shall be a guarantor under the DIP Note Purchase Agreement and, by this Order, shall be authorized to execute, deliver and perform all obligations and acts under any and all agreements, documents, instruments or otherwise in connection therewith.

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

postpetition financing; (2) providing adequate protection, granting liens and superpriority claims, (3) authorizing the Debtors to repay all of the Prepetition Obligations (as hereinafter defined) in full, as provided herein and in the DIP Note Purchase Agreement; (4) modifying the automatic stay, and (5) scheduling a final hearing; and an interim hearing having been held by this Court on January 13, 2011 (the "Interim Hearing"); and upon the record made by the Debtors in their Motion, at the Interim Hearing (including but not limited to the admission into evidence of the Borseth Declaration filed contemporaneously with the Motion) and upon all the proceedings before the Court and all evidence submitted or addressed and the arguments of counsel made at the Interim Hearing; after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction.* This Court has ~~core~~ jurisdiction over the Cases/this Motion~~, and the parties and property affected hereby~~ pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      *Notice.* The Debtors provided notice of the Interim Hearing to, and, upon entry of this Order, will serve this Order on: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Local Rule 2002-1(b); (c) counsel to the DIP Agent; (d) counsel to the Indenture Trustee for the Senior Secured FRNs; (e) counsel to the Consenting Noteholders; (f) counsel to the Prepetition Secured Lender; (g) the Internal Revenue Service; and (h) the Securities and Exchange Commission. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim

2

Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.     *Debtors' Stipulation.* The Debtors acknowledge, admit, stipulate, and agree (which acknowledgements, admissions, stipulations, and agreements shall be binding on the Debtors and their estates subject to paragraphs 8, 16 and 21 of this Order) that:

(a)     Pursuant to that certain Credit Agreement dated as of February 11, 2010 (as amended by that certain Amendment No. 1 to Credit Agreement dated as of August 12, 2010, and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "Prepetition Credit Agreement"), by and among Constar, Inc. as the borrower (the "Borrower"), the other parties thereto designated as credit parties, and the Prepetition Secured Lender, as lender, swingline lender and as agent, the Prepetition Secured Lender made certain revolving loans and other financial accommodations to or for the benefit of the Borrower. The Prepetition Credit Agreement and any other agreements, instruments, notes, guaranties and other documents executed in connection therewith are collectively referred to herein as "Prepetition Credit Documents." All obligations of the Borrower and the other Debtors arising under the Prepetition Credit Documents, including all loans, advances, debts, liabilities, principal, interest, fees, swap exposure, charges, expenses, indemnities, and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Lender, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "Prepetition Obligations;"

(b)     Each Debtor other than the Borrower has (i) jointly, severally, absolutely, unconditionally and irrevocably guarantied (as primary obligor and not merely as surety, without limitation and with full recourse) the payment when due and timely performance of all

3

Prepetition Obligations, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or then or thereafter existing; and (b) granted to the Prepetition Secured Lender, as security for the Prepetition Obligations, (i) first priority security interests in and continuing liens on certain assets of the Debtors, including, but not limited to, (a) all accounts, chattel paper, deposit accounts, documents (as defined in the Uniform Commercial Code), general intangibles, instruments, inventory, investment property, letter of credit rights, tax refunds and any supporting obligations related to any of the foregoing; (b) certain commercial tort claims; (c) all books and records pertaining to the other property pledged to the Prepetition Secured Lender; (d) all property of any Debtor held by the Prepetition Secured Lender, including all property of every description in the custody of or in transit to the Prepetition Secured Lender for any purpose, including safekeeping, collection or pledge, for the account of such Debtor or as to which such Debtor may have any right or power, including but not limited to cash; (e) all other goods (including, but not limited, to fixtures) and personal property of such Debtor, whether tangible or intangible and wherever located (but excluding any First Mortgage Collateral (as defined in the Prepetition Credit Agreement)); (f) to the extent not otherwise included, all proceeds of the foregoing; and (h) a pledge of certain stock and debt instruments. All collateral granted or pledged by the Debtors to the Prepetition Secured Lender shall collectively be referred to herein as the "Prepetition Collateral;"

(c)     As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Secured Lender pursuant to the Prepetition Credit Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $29,122,772.85 million in respect of loans and other financial accommodations made by the Prepetition Secured Lender pursuant to and in accordance with the terms of the Prepetition Credit Documents, plus (i) the

4

aggregate face amount of all letters of credit issued under the Prepetition Credit Documents, (ii)

all accrued or hereafter accruing and unpaid interest and letter of credit fees thereon, (iii) all

unpaid fees and expenses (including, but not limited to, (a) all professional fees and expenses

that are chargeable or reimbursable under the Prepetition Credit Agreement and (b) the

prepayment fee payable pursuant to Section 1.9(d) of the Prepetition Credit Agreement) now or

hereafter due under the Prepetition Credit Documents, and (iv) any other obligations of the

Debtors under the Prepetition Credit Documents, including any indemnification or

reimbursement obligations in favor of the Prepetition Secured Lender;

        (d)     All Prepetition Credit Documents executed and delivered by the Debtors

to the Prepetition Secured Lender are valid and enforceable by the Prepetition Secured Lender

against each of the Debtors. The Prepetition Secured Lender duly perfected its liens upon and

security interests in the Prepetition Collateral in accordance with applicable law by, among other

things, filing financing statements, entering into deposit account control agreements with the

Debtors, and, where necessary, by possession of relevant instruments, certificates, or other

property. All of such financing statements and deposit account control agreements were validly

executed prior to the Petition Date by authorized representatives of the Debtors;

        (e)     The liens and security interests of the Prepetition Secured Lender in the

Prepetition Collateral, as security for the Prepetition Obligations, constitute valid, binding,

enforceable and perfected first priority liens and security interests and are not subject to

avoidance, disallowance, subordination or re-characterization pursuant to the Bankruptcy Code

or applicable non-bankruptcy law. The Prepetition Obligations constitute legal, valid and

binding obligations of the Debtors, no offsets, defenses or counterclaims to the Prepetition

Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance,

disallowance, reduction, subordination or re-characterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Lender with respect to the Prepetition Credit Documents or otherwise, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code. The Debtors, on behalf of their respective bankruptcy estates, irrevocably waive any right to (i) challenge or contest the liens or security interests of the Prepetition Secured Lender in the Prepetition Collateral, (ii) challenge or contest the validity of the Prepetition Obligations, or (iii) assert any claims or causes of action against the Prepetition Secured Lender or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or applicable non-bankruptcy law. For the avoidance of doubt, and notwithstanding anything to the contrary herein or otherwise, until entry of the Final Order, by providing notice to the DIP Agent at Black Diamond Commercial Finance, L.L.C., 100 Field Drive, Lake Forest, Illinois 60045-2580, Attn: Hugo H. Gravenhorst, Tel: (847) 582-9138, E-mail: hgravenhorst@bdcf.com, each FRN Holder may elect to become a DIP Facility Provide and purchase notes under the DIP Facility in an aggregate amount based upon such FRN Holder's percentage holdings of Senior Secured FRNs;

(f)     As of the Petition Date, the value of the Prepetition Collateral, including the Cash Collateral, was greater than the amount of the Prepetition Obligations;

(g)     as of the Petition Date, the Debtors were truly and justly indebted to the holders of the Senior Secured FRNs (the "FRN Holders"), without defense, counterclaim or offset of any kind in the aggregate principal amount of not less than $220,000,000 in respect of

6

the Senior Secured FRNs and the obligations under the FRN Indenture, plus accrued and unpaid interest thereon, any fees, costs, and other charges payable under the FRN Indenture or the Senior Secured FRNs and any out-of-pocket fees and expenses (including reasonable fees and expenses of attorneys and advisors) as provided in the FRN Indenture or the Senior Secured FRNs (collectively, the "FRN Obligations");

(h)    the liens and security interests granted to the FRN Indenture Trustee for the benefit of the holders of the Senior Secured FRNs pursuant to the FRN Indenture and the documents and instruments executed in connection therewith (the "FRN Liens") are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the FRN Indenture) liens on and security interests in the personal and real property and other assets of the Debtors' constituting "Collateral" under, and as defined in, the FRN Indenture in respect of the FRN Obligations (the "FRN Collateral"), and (ii) not subject to valid objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iii) subject and subordinate only to, after giving effect to this Order, the Carve Out (as defined in paragraph 7 below), the DIP Liens, and the Residual Prepetition Obligation Liens. For the avoidance of doubt, the FRN Collateral does not include any Prepetition Collateral or the L/C Cash Collateral, and the Prepetition Collateral does not include any FRN Collateral;

(i)    the FRN Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); and

(j)    no portion of the FRN Obligations or the FRN Liens shall be subject to valid objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or

7

subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and the

Debtors do not have any claims, counterclaims, causes of action, defenses, setoff or recoupment

rights, and have waived, discharged, and released any other rights (i) whether arising under the

Bankruptcy Code or applicable nonbankruptcy law, against the holders of the Senior Secured

FRNs, the FRN Indenture Trustee, and their respective affiliates, subsidiaries, agents, officers,

directors, employees, attorneys and advisors, and (ii) any right they have or may have to

challenge the FRN Obligations, FRN Liens, or FRN Collateral.

4.      *Findings Regarding the DIP Facility.*

(a)      Good cause has been shown for the entry of this Order. The ~~ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Note Purch~~ase ~~Agreement and use of cash collateral is vital to the Debtors' estates and creditors~~. The liquidity to be provided under the DIP Note Purchase Agreement and through the use of cash collateral will enable the Debtors to continue to operate their businesses in the ordinary course ~~and preserve the value of the Debtors' businesse~~s.

(b)      The Debtors have an immediate need to use cash collateral and obtain the financing provided by the DIP Facility, in order for, among other things, continuing the operation of their businesses in an orderly manner, maintaining business relationships with vendors, suppliers, and customers, paying employees, and satisfying other working capital and operational needs. Posting cash collateral with the Prepetition Secured Lender to secure the Prepetition Letters of Credit is also necessary to the operation of Debtors' business and the maintenance of relationships with its vendors suppliers and customers.

(c)      The Debtors do not have sufficient liquidity under the Prepetition Credit Agreement or from the use of cash collateral to operate in the ordinary course of business and

8

implement their proposed restructuring pursuant to the Plan. ~~It is also a condition precedent to the Debtors obtaining the funds under the DIP Facility~~ that the Prepetition Obligations be repaid in full. Repaying the Prepetition Obligations in full will permit the Debtors to obtain additional liquidity under the DIP Note Purchase Agreement, obviate the need to segregate and separately account for post-closing collections, and avoid intercreditor disputes as well as the accrual of interest payments under the Prepetition Credit Agreement, potentially at default rates. ~~Repaying the Prepetition Obligations in full at the outset of these Cases, therefore, maximizes the value of the Debtors' estates~~. The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Facility Providers pursuant to, and for the purposes set forth in, the DIP Note Purchase Agreement and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

(d)     All of the Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Facility, the use of cash collateral, and all other financial accommodations provided under the DIP Note Purchase Agreement and this Order. The terms of Note Documents (as defined in the DIP Note Purchase Agreement) are fair and reasonable, reflect the Debtors' exercise of prudent business judgment ~~consistent with their fiduciary duties~~ and constitute reasonably equivalent value and fair consideration.

(e)     The Note Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, and the DIP Facility Providers, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Facility, including without limitation, the terms for repayment of the notes to be issued by Debtors and Debtors' other obligations, including without limitation fee obligations under the Note Documents and this Order owing to any DIP Facility Providers

(collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Facility Providers in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). Absent granting the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and repayment of the Prepetition Obligations in accordance with this Order and the DIP Note Purchase Agreement are, therefore, in the best interest of the Debtors' estates.

5.     *Disposition.* The Motion is granted on an interim basis on the terms set forth in this Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits. This Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

6.     *Authorization of the DIP Facility and the Note Documents.*

(a)     The Debtors are hereby authorized to execute, deliver and perform their respective obligations under the Note Documents, including incurrence of their obligations under all agreements, documents and instruments executed in connection therewith, in each case, including any amendments thereto, and, in the case of the Issuers, pending entry of the Final Order, to issue under the DIP Note Purchase Agreement up to an aggregate principal amount of $38,000,000 of notes for working capital and other general corporate purposes of the Debtors and their affiliates in accordance with the Budget, including without limitation, to pay all

10

interest, fees and expenses in connection with the DIP Facility, and to repay in full (or cash collateralize) the Prepetition Obligations.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts and to execute and deliver all instruments and documents that the DIP Agent requests or the Debtors determine to be reasonably required or necessary for the Debtors' performance of their obligations under the Note Documents, including without limitation:

(i)     the execution, delivery and performance of the Note Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the Note Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Facility Providers may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the Note Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the DIP Facility or (B) increase the commitments or the rates of interest payable on the DIP Facility under the DIP Note Purchase Agreement (other than as a result of default interest); provided, however, that the Debtors shall provide the U.S. Trustee, counsel to any statutory committee appointed in the Cases (a "Committee"), and counsel to the FRN Indenture Trustee with three (3) business days advance notice (which may be provided through electronic mail) of their intent to enter into any material amendments, consents, waivers or modifications to the DIP Note Purchase Agreement. Unless the U.S. Trustee , a Committee or the FRN Indenture Trustee objects in writing to such amendment, consent, waiver or modification prior to the expiration of the three (3) business day period, such amendment,

11

consent, waiver or modification shall become effective in accordance with its terms without further order of the Court;

(iii)     the non-refundable payment to the DIP Agent, its affiliates and the DIP Facility Providers, as the case may be, of the fees set forth in the Note Documents and any separate fee letter with the DIP Agent or its affiliates;

(iv)     the immediate repayment in full of all Prepetition Obligations currently due and owing, and the execution and delivery of all instruments and documents that the Prepetition Secured Lender reasonably requests in connection therewith; and

(v)     the performance of all other acts required under or in connection with the Note Documents.

(c)     Upon execution and delivery of the Note Documents, the Note Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the Note Documents. No obligation, payment, transfer or grant of security by the Debtors under the Note Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.     *Superpriority Claims.*

(a)     Except only to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(l) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against the Debtors

12

with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided that, notwithstanding anything herein to the contrary, the L/C Cash Collateral shall not be subject to the Superpriority Claims and such Superpriority Claims shall not be payable from the L/C Cash Collateral; provided, further, that, notwithstanding the foregoing, to the extent any of the L/C Cash Collateral is released to the Debtors following the indefeasible payment in full of all L/C Obligations, it shall thereafter be subject to the Superpriority Claims and the DIP Liens (as defined herein), and shall be immediately returned to the DIP Facility Providers. Except as set forth herein, no other superpriority claims shall be granted or allowed in these chapter 11 cases without the written consent of the DIP Agent.

(b)     For purposes hereof, the "Carve Out" shall mean, (i) the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and fees payable to the Clerk of this Court, and (ii) subject to the terms and conditions of this Order and the Budget, the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Petition Date and prior to the occurrence of an Event of Default under the DIP Note Purchase Agreement or other termination under this Order, the Final Order or the DIP Note Purchase Agreement, to the extent allowed and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code (but excluding success, completion or other transaction fees) and any interim procedures order by

13

attorneys, accountants and other professionals retained by the Debtors and any Committee under

sections 327 or 1103(a) of the Bankruptcy Code (the "Professionals"); and (iii) the unpaid and

outstanding reasonable fees and expenses actually incurred from or after the occurrence of an

Event of Default or other termination under this Order, the Final Order or the DIP Note Purchase

Agreement, to the extent allowed and payable under sections 326, 328, 330, and 331 of the

Bankruptcy Code (but excluding success, completion or other transaction fees) and any interim

procedures order by the Professionals in an aggregate amount not to exceed $250,000.

8.        (a) *Restriction on Use of Funds.* The Superpriority Claims, the DIP Liens, and the

DIP Obligations shall be senior to, and no proceeds of the DIP Facility, the DIP Collateral, the

FRN Collateral, or the Prepetition Collateral may be used to pay any claims for services rendered

by any of the professionals retained by the Debtors, any creditor or party in interest, any

Committee or any other party in connection with the assertion of or joinder in any claim,

counterclaim, action, proceeding, application, motion, objection, defense or other contested

matter against the Prepetition Secured Lender, DIP Agent, the DIP Facility Providers, the FRN

Indenture Trustee, or the FRN Holders in connection with the challenge of any claims or liens

arising under or with respect to the Prepetition Obligations, DIP Obligations or the FRN

Obligations.  In addition, notwithstanding anything herein to the contrary, no proceeds from the

DIP Facility, the DIP Collateral, the FRN Collateral, the Prepetition Collateral or any portion of

the Carve Out, may be used by any of the Debtors, any Committee, and/or any trustee appointed

in these Cases, or any other person, party or entity to (a) assert ~~join, commence, support or~~ any claim or litigation, cause of action (or claim objection or disallowance)

~~prosecute any action for any claim, counter-claim, action, proceeding, application, motion,~~ related to the

~~objection, defense, or other contested matter seeking any order, judgment, determination or~~ claims or liens granted

~~similar relief against, or adverse to the interests of, in such capacity, the DIP Agent, the DIP~~ hereunder to

the DIP Agent or a DIP facility provider, or related to the claims or liens of the FRN Indenture Trustee and FRN Holders.

14

~~Facility Providers, the FRN Indenture Trustee, the FRN Holders, the Prepetition Secured Lender~~ or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) commence or prosecute any action relating to any act, omission or aspect of the relationship between DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, the FRN Holders, the Prepetition Secured Lender and the Debtors and their affiliates in such capacities; (ii) commence or prosecute any action with respect to the validity and extent of the DIP Obligations, the Prepetition Obligations or the FRN Obligations or the validity, extent, and priority of the DIP Liens, the Prepetition Secured Lender Liens, the Residual Prepetition Obligations Lien, or FRN Liens; (iii) commence or prosecute any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the FRN Obligations, the Prepetition Secured Lender Obligations, the Prepetition Secured Lender Liens, the Residual Prepetition Obligations Lien, or the FRN Liens; and/or (iv) commence or prosecute any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Agent, the Prepetition Secured Lender or the DIP Facility Providers in respect of their liens and security interests in the DIP Collateral, the Prepetition Collateral or the FRN Collateral; and/or (b) pay any Claim (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Agent, except as otherwise permitted by this Order, the Final Order, ~~the DIP Note Purchase Agreement, or otherwise in accordance with the Budget~~.

Notwithstanding the restriction on the use of funds set forth in this paragraph 8, the Committee shall be authorized to expend up to a maximum of $50,000 of proceeds from the DIP Facility, the DIP Collateral, the FRN Collateral, and/or the Carve Out solely in connection with the investigation of the validity or enforceability of the FRN Collateral.

(b) *Investigation Period (FRN Holders).* Notwithstanding anything herein or in the DIP Note Purchase Agreement to the contrary, (i) from the date of appointment of a Committee through the sixtieth (60th) day thereafter with respect to the Committee or (ii) seventy-five (75) days from the date of entry of this Order with respect to any other party in interest (the earlier of such dates, the "FRN Investigation Termination Date"), the Committee or any party in interest with the requisite standing, other than the Debtors, shall be entitled to investigate the validity, perfection, enforceability, and extent of the FRN Liens, the FRN Indenture and/or the FRN Collateral and any potential claims of the Debtors or their estates against the Prepetition Secured Lender arising from or related to the FRN Holders arising from or related to the FRN Indenture. If no such action is filed on or before the FRN Investigation Termination Date, the Committee, all holders of claims and interests as well as all other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors' stipulations made herein shall be irrevocably binding on the Committee, all holders of claims and interests and all parties in interest, including any equity committee. If such an action is timely and properly brought, any claim or action that is not brought shall be forever barred. Absent entry of an order of this Court extending the FRN Investigation Termination Date prior to the occurrence thereof, the Investigation Termination Date shall not be extended without the written consent of the FRN Indenture Trustee and the requisite number of FRN Holders authorized to provide such consent under the FRN Indenture with respect to the matters related to the Senior Secured FRNs. For the avoidance of doubt, notwithstanding anything to the contrary herein, any trustee appointed or elected in these cases shall, until the FRN Investigation Termination Date and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 8(b) (whether commenced by such trustee or commenced by any other

16

party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtors in this Order.

9.    *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Facility Providers (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"; provided that notwithstanding anything herein to the contrary, the DIP Liens (defined below) shall be subject to the Carve Out and the Residual Prepetition Obligations Liens (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Facility Providers, pursuant to this Order and the Note Documents, the "DIP Liens"):

(a)    First Lien On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property (including cash and cash equivalents) of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property

leaseholds, fixtures, machinery, equipment, trucks, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of any Issuer and the proceeds of all of the foregoing, and, subject to entry of the Final Order, any Avoidance Actions, and any proceeds or property recovered in respect of any Avoidance Actions, provided that, the Unencumbered Property shall not include (i) any assets upon which security may not be lawfully granted or (ii) 35% of the issued and outstanding Voting Stock (as defined in the DIP Note Purchase Agreement) of any new or existing Foreign Subsidiary (as defined in the DIP Note Purchase Agreement) (other than Constar International U.K. Limited, of which 100% of the outstanding Voting Stock shall be subject to the liens granted hereto) and, for the avoidance of doubt, 100% of the issued and outstanding Voting Stock of any new or existing Excluded Foreign Subsidiary not owed directly by a Debtor) (collectively, the "Excluded Property"). For the avoidance of doubt, subject to the continuing validity, priority and enforceability of the Residual Prepetition Obligation Liens in accordance with the terms of this Order, the Prepetition Collateral shall be Unencumbered Property upon repayment in full of the Prepetition Obligations and, in connection with and after such repayment, shall be secured on a first lien basis by the DIP Liens.

        (b)     Liens Junior to Certain Existing Liens.

        (i)     Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than Excluded Property), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date

as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Facility Providers shall be junior to such valid, perfected and unavoidable liens (including the existing liens on the Prepetition Collateral in favor of the Prepetition Secured Lender until the Prepetition Obligations have been repaid in full).

(ii)     Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all L/C Cash Collateral, whether now existing or hereafter acquired, which security interests and liens in favor of the DIP Agent and the DIP Facility Providers shall be junior in priority to the L/C Cash Collateral Lien (as hereinafter defined) and with respect to which the DIP Agent and the DIP Facility Providers shall not be entitled to exercise any rights or remedies until the indefeasible payment in full of all L/C Obligations or until the L/C Obligations are released.

(c)     <u>Liens Senior to Liens Securing Senior Secured FRNs</u>.  Pursuant to section 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in all tangible and intangible prepetition and postpetition property (including cash and cash equivalents) of the Debtors (other than Excluded Property), whether now existing or hereafter acquired, that is subject to a lien or security interest held by or for the benefit of holders of the Senior Secured FRNs, including but not limited to any and all liens and security interests in the FRN Collateral.     It shall be an Event of Default hereunder if an order is entered

(d)     <u>Liens Senior to Certain Other Liens</u>. The DIP Liens shall not be are finding that

(i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

19

10.     *Remedies After Event of Default.* The automatic stay under section 362 of the

Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and

the DIP Facility Providers to exercise, (i) immediately upon the occurrence and during the

continuance of an Event of Default (as defined in the DIP Note Purchase Agreement), all rights

and remedies under the Note Documents, other than those rights and remedies against the DIP

Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the

continuance of an Event of Default, and the giving of five (5) business days' prior written notice

to the Debtors (with a copy to counsel to the Debtors, counsel to any Committee, the FRN

Indenture Trustee, and to the U.S. Trustee), all rights and remedies against the DIP Collateral

provided for in the Note Documents and this Order, subject in each case to the rights set forth in

paragraph 7(b) of this Order. The DIP Agent's or any DIP Facility Provider's delay or failure to

exercise rights and remedies under the Note Documents or this Order shall not constitute a

waiver of the DIP Agent's or any DIP Facility Provider's rights hereunder, thereunder or

otherwise, unless any such waiver is pursuant to a written instrument executed in accordance

with the terms of the DIP Note Purchase Agreement. *~~J after entry of a Final order, From and after~~*

11.     *Equities of the Case Waiver.* ~~[~~The DIP Agent and the DIP Facility Providers shall

each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. No

person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code

against the DIP Agent or the DIP Facility Providers with respect to proceeds, product, offspring

or profits of any of the DIP Collateral.

12.     *Limitation on Charging Expenses Against Collateral.* From and after entry of a Final

Order, Debtors shall waive their rights under section 506(c) of the Bankruptcy Code, and, except

to the extent of the Carve Out, no expenses of administration of the Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent and no such consent shall be implied from any other action or inaction by the DIP Agent or the DIP Facility Providers.

13.     *No Marshaling.* From one after entry of a Final Order, (In no event shall the DIP Agent or the DIP Facility Providers be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or any other collateral securing the DIP Obligations.

14.     *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Facility Providers or the Prepetition Agent on behalf of the Prepetition Secured Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

15.     *Repayment of the Prepetition Obligations.*

(a)     The Debtors are hereby authorized to use a portion of the DIP Facility proceeds to repay in full all outstanding Prepetition Obligations on the closing date of the DIP Note Purchase Agreement. Upon the payment in full of all outstanding Prepetition Obligations, the Prepetition Credit Agreement shall be deemed to be cancelled; provided that the Prepetition Credit Agreement shall continue in effect solely to preserve the Prepetition Secured Lender's rights that expressly survive the termination of the Prepetition Credit Agreement in accordance with the terms thereof. Notwithstanding anything to the contrary herein, to the extent any indemnification, reimbursement or other obligations owed to the Prepetition Secured Lender pursuant to the Prepetition Credit Documents remain outstanding or arise after giving effect to the payment of all outstanding Prepetition Obligations (including, without limitation, (i) all

contingent indemnity obligations arising under the Prepetition Credit Documents which, by their terms, survive the payment in full of all existing Prepetition Obligations, and (ii) claims for professional fees and expenses incurred by the Prepetition Secured Lender pursuant to the terms of the Prepetition Credit Documents) (collectively, the "Residual Prepetition Obligations"), the Prepetition Secured Lender Liens (as hereinafter defined) shall continue to secure, on a first lien basis, the repayment of such Residual Prepetition Obligations up to the maximum aggregate amount of $1,000,000 (the "Residual Prepetition Obligations Cap Amount"). The continuing Prepetition Secured Lender Liens securing the repayment of the Residual Prepetition Obligations Cap Amount shall be referred to herein as the "Residual Prepetition Obligations Lien." All Residual Prepetition Obligations in excess of the Residual Prepetition Obligations Cap Amount shall constitute administrative expense claims under section 503(b) of the Bankruptcy Code. The Debtors shall promptly pay all Residual Prepetition Obligations that become fixed and non-contingent.

(b)     The Debtors and the Prepetition Secured Lender are hereby authorized to take all actions necessary to effectuate the provisions of this paragraph 11, including, without limitation, to make such filings or releases as necessary to cancel, terminate, release, discharge and/or extinguish any of the Prepetition Secured Lender Liens, assignments of control agreements, landlord agreements and all other security agreements of any kind and form upon the indefeasible repayment in full of all Prepetition Obligations and to execute and deliver all instruments and documents that the Prepetition Secured Lender reasonably requests in connection therewith.

16.     *Investigation Period (Prepetition Secured Lender)*. The stipulations and admissions contained in this Order with respect to the Prepetition Secured Lender, the prepetition liens and

security interests on the Prepetition Collateral in favor of the Prepetition Secured Lender (collectively, the "Prepetition Secured Lender Liens") or the Prepetition Collateral, including, without limitation, in recital paragraphs 3(a) through 3(f) hereof, shall be (i) binding on the Debtors under all circumstances and (ii) binding on all other parties in interest, including, without limitation, the Committee, unless, and solely to the extent that, (a) the Committee or another party in interest with requisite standing has timely and properly commenced an adversary proceeding or contested matter challenging the amount, validity, or enforceability of any portion of the Prepetition Obligations, or the perfection or priority of the Prepetition Secured Lender Liens in any of the Prepetition Collateral, or otherwise asserting any specific claims or causes of action on behalf of the Debtors' estates against the Prepetition Secured Lender relating to the Prepetition Obligations, no later than the earlier of (i) seventy-five (75) days from the Petition Date and (ii) sixty (60) days after the date of appointment of the Committee (the earlier of such dates, the "Prepetition Secured Lender Investigation Termination Date"), and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely commenced as of such date, then without further order of the Court, (a) the claims, liens and security interests of the Prepetition Secured Lender shall be deemed to be finally allowed for all purposes in these Cases and any subsequent chapter 7 cases and shall not be subject to challenge by any party in interest as to validity, priority or otherwise, (b) the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Secured Lender with respect to the Prepetition Credit Documents or any related transactions, and (c) all prior payments by the Debtors on account of the Prepetition Obligations shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense or challenge by any

party in interest (including any successor to or estate representative of the Debtors) for any reason. If any such adversary proceeding or contested matter is timely commenced by the Committee or another party in interest with requisite standing, (aa) the stipulations set forth in paragraphs 3(a) through 3(f) hereof shall remain binding on all parties in interest except to the extent expressly challenged, if at all, in such adversary proceeding or contested matter and (bb) any portion of the Prepetition Obligations and the Prepetition Secured Lender Liens that is not specifically challenged in such adversary proceeding or contested matter shall, without further order of the Court, be deemed to be finally allowed for all purposes in these Cases and any subsequent chapter 7 cases. The Prepetition Secured Lender shall not be required to file a proof of claim in these Cases and the final allowance of the Prepetition Obligations shall be governed by this Order. For the avoidance of doubt, notwithstanding anything to contrary herein, any trustee appointed or elected in these cases shall, until the Prepetition Secured Lender Investigation Termination Date and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 16 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Order.

17.     *No Waiver; Reservation of Rights.* Except as otherwise specifically set forth herein, the Prepetition Secured Lender does not waive any rights or priorities it may have under the Prepetition Credit Documents (including, without limitation, the Intercreditor Agreement (as defined in the Prepetition Credit Agreement), and expressly reserves all of the rights available to it under the Prepetition Credit Documents, the Bankruptcy Code, or any other applicable law.

18.     *L/C Cash Collateral.*  Promptly upon entry of this Order, and in any event upon

payment in full of the outstanding Prepetition Obligations, the Debtors shall post cash collateral

(such cash collateral being the "L/C Cash Collateral") with the Prepetition Secured Lender in an

amount equal to 105% of the aggregate face amount of all undrawn letters of credit issued and

outstanding under the Prepetition Credit Agreement (collectively, the "Prepetition Letters of

Credit"), to be held by the Prepetition Secured Lender for purposes of reimbursement of draws

under, and satisfying other obligations relating to, the Prepetition Letters of Credit (including,

without limitation, the payment of any fees and expenses relating thereto) (collectively, the "L/C

Obligations").  The Debtors hereby grant to the Prepetition Secured Lender a first priority lien on

and security interest in the L/C Cash Collateral (the "L/C Cash Collateral Lien") as security for

the timely payment when due of all L/C Obligations related to the Prepetition Letters of Credit.

The L/C Cash Collateral Lien shall not be subject to challenge and shall attach and become valid,

perfected, enforceable, non-avoidable and effective by operation of law without any further

action by the Debtors or the Prepetition Secured Lender, and without the necessity of execution

by the Debtors, or the filing or recordation, of any financing statements, security agreements, or

other documents.  Except as otherwise as set forth in paragraph 9(b)(ii) of this Order, the L/C

Cash Collateral shall be free and clear of all other liens, claims and encumbrances.  The

Prepetition Secured Lender shall be authorized to apply the L/C Cash Collateral to the L/C

Obligations without further order of this Court in accordance with the terms of the Prepetition

Credit Documents.  The L/C Cash Collateral Lien and the other rights and protections granted to

the Prepetition Secured Lender pursuant to this Order shall survive, and shall not be modified,

impaired or discharged by (i) the entry of an order converting any of the Cases to a case under

chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission,

25

or (ii) the entry of an order confirming a plan of reorganization in any of the Cases; shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code; and the L/C Cash Collateral Lien and all other rights and remedies of the Prepetition Secured Lender under this Order shall continue in full force and effect until all L/C Obligations have been repaid in full.

19.     *Perfection of DIP Liens.*

(a)     The DIP Agent and the DIP Facility Providers are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, vehicle titles, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens granted to them hereunder. Whether or not the DIP Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens, such DIP Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order and no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted hereunder.

(b)     A certified copy of this Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, vehicle titles, notices of lien or similar instruments, and all filing offices are hereby authorized ~~and directed~~ to accept such certified copy of this Order for filing and recording.

26

(c)     The Debtors shall execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens, in each case in accordance with and to the extent required by, the Note Documents. *From and after entry of a Final Order,*

(d)     ~~Any~~ provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, shall have no force and effect with respect to the granting of the DIP Liens on the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Facility Providers in accordance with the terms of the Note Documents or this Order. Subject to the entry of the Final Order, any such provision shall be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force and effect with respect to the granting of the DIP Liens on such lease or other license, contract or other agreement.

20.     *Sale/Conversion/Dismissal.* *It shall be an Event of Default if the Debtors seek to sell* ~~No order providing for either the sale of the ownership of the stock of the Debtors or the sale of~~ all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to a party without the consent of the DIP Agent shall be entered by the Court unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Obligations and such DIP Obligations are indefeasibly paid in full in cash and the commitments under the DIP Note Purchase Agreement and this Interim Order are terminated in accordance therewith on the closing date of such sale.

21. *Preservation of Rights to Credit Bid.* The DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, and the holders of the Senior Secured FRNs, shall have the right, collectively and individually, to credit bid for any asset(s) of the Debtors that is (are) subject to their respective liens, offered at a sale, lease or other disposition outside the ordinary course of business (including any auction or other similar sales), whether pursuant to a plan of reorganization or a motion pursuant to section 363 of the Bankruptcy Code, or otherwise~~,~~ and may, if the DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, and/or the holders of the Senior Secured FRNs purchase(s) such asset or assets offset the purchase price of such asset or assets against the full amount of their respective secured claims, subject to the various rights and priorities existing among the DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, and the holders of the Senior Secured FRNs.

22. *Preservation of Rights Granted Under the Order.*
It shall constitute an event of default under this Order if any order entered in which any

(a) ~~( Except as otherwise explicitly provided in this Order or in the DIP Note Purchase Agreement, no~~ claims, liens, interests, or priority status having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent or the DIP Facility Providers, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) or the commitments under the DIP Note Purchase Agreement remain outstanding, and~~(~~ the DIP renders Liens ~~shall not be~~ subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless all DIP Obligations shall have been paid in full in cash, ~~the Debtors~~ shall ~~not seek, and~~ it shall constitute an Event of Default under the DIP Agreement if any of the

Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the greatest extent permitted by applicable law, that (A) the Superpriority Claims, the other administrative claims granted pursuant to this Order, and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full (other than contingent indemnity and fee obligations) (and that such Superpriority Claims, the other administrative claims granted pursuant to this Order and the DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)        ~~If any or all of the provisions of this Order are hereafter reversed~~, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtors to the DIP Agent or the DIP Facility Providers, as the case may be, prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacatur shall ~~be governed in all respects by the original provisions of this Order, and~~ the DIP Agent and the

29

DIP Facility Providers shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the Note Documents with respect to all DIP Obligations.

(d) Except as expressly provided in this Order or in the Note Documents, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Agent and the DIP Facility Providers granted by this Order and the Note Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. Except as expressly provided in this Order or in the Note Documents, the terms and provisions of this Order and the Note Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the Superpriority Claims, the other administrative Claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent and the DIP Facility Providers granted by this Order and the Note Documents shall continue in full force and effect until all DIP Obligations (other than contingent indemnity and fee obligations) are paid in full in cash.

23. *Adequate Protection for Priming Lien of Senior Secured FRNs.* As adequate protection for any diminution in the value of the FRN Collateral from and after the Petition Date, effective upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or

control by the FRN Indenture Trustee or the Senior Secured FRNS of any property, pursuant to sections 363 and 361 of the Bankruptcy Code the following adequate protection is hereby provided and granted to the FRN Indenture Trustee, for its own benefit and for the benefit of the holders of the Senior Secured FRNs:

(a) valid, binding, continuing, enforceable, fully-perfected second priority liens on, and security interests in (the "Adequate Protection Liens") all existing and future tangible and intangible assets of the Debtors other than Excluded Property, subject to the Carve Out, the DIP Liens, and the Residual Prepetition Obligation Liens;

(b) reimbursement of the reasonable fees and expenses of (x) the Consenting Noteholders' professionals, consisting of Kirkland & Ellis LLP and one local counsel and any financial advisor retained by the Consenting Noteholders and (y) the FRN Indenture Trustee that are due and payable under the FRN Indenture (including, but not limited to, one outside legal counsel), in each case to the extent incurred in connection with the Debtors chapter 11 cases; and

(c) to the extent the Adequate Protection Liens and such fees and expenses are insufficient to provide adequate protection for any diminution in the value of the FRN Collateral from and after the Petition Date super priority administrative expense claims for the amount of such diminution pursuant to section 507(b) of the Bankruptcy Code, which claims shall be junior to the Superpriority Claims and shall be payable from and have recourse to all assets and property of the DIP Obligors other than the Carve Out or the L/C Cash Collateral.

24. *Use of DIP Facility and DIP Collateral.*

(a) Permitted Uses. In accordance with the terms of the Note Documents, Debtors shall use the DIP Facility, pursuant to the agreed-upon Budget, to (1) provide for postpetition working capital and other general corporate purposes of the Debtors in accordance

with the Budget, (2) to pay interest, fees, and expenses under the DIP Note Purchase Agreement, (3) to repay the Prepetition Obligations, and (4) to post the L/C Cash Collateral.

      (b)    <u>Limitation on Use</u>. The Debtors shall use the DIP Facility solely as provided in this Order and the Note Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no funds received from the sale of notes under the DIP Note Purchase Agreement, no DIP Collateral or the Carve Out may be used to ~~(a) object, contest or raise any defense to,~~ the validity, perfection, priority, extent or enforceability ~~of any amount~~ due under the Note Documents, the FRN Indenture, or the Senior Secured FRNs or the liens or claims granted under this Order, the Note Documents, the FRN Indenture, or the Senior Secured FRNs, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, the holders of the Senior Secured FRNs or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the DIP Collateral in accordance with the Note Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee, or the holders of the Senior Secured FRNs hereunder or under the Note Documents, or the FRN Indenture, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date (other than the Prepetition Obligations) unless such payments ~~are (i) approved by an Order of this Court and (ii) permitted under the Note Documents,~~ <u>provided</u> that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the funds provided from the sale of notes under the DIP Note Purchase Agreement, the DIP Collateral or the Carve Out may be used by any Committee to investigate the validity,

*assert any claim or litigation, cause of action (or claim objection or disallowance) related to the claims or liens granted hereunder to the DIP Agent or a Facility Provider, or related to the claims or liens of the FRN Indenture Trustee and FRN Holders.*

enforceability or priority of the FRN Obligations or the FRN Liens or investigate any Claims and Defenses or other causes action against the FRN Indenture Trustee or holders of the Senior Secured FRNs.

25.  *Order Governs.* In the event of any inconsistency between the provisions of this Order and the Note Documents, the provisions of this Order shall govern.

26.  *DIP Agent & DIP Facility Providers Not Responsible Persons.* In (a) making the decision to provide the DIP Facility; (b) administering the DIP Facility; (c) extending related financial accommodations to the Debtors; and (d) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent nor the DIP Facility Providers shall be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal, state or local law, statute or ordinance).

27.  *Binding Effect; Successors and Assigns.* The Note Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Facility Providers, the Prepetition Agent, the Prepetition Secured Lenders, the FRN Indenture Trustee, the holders of the Senior Secured FRNs, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the

33

estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Facility Providers, the Prepetition Agent, the Prepetition Secured Lenders, the FRN Indenture Trustee, the holders of the Senior Secured FRNs, and the Debtors and their respective successors and assigns.

28.     *Collateral Rights.* In the event any party holding a lien or security interest in DIP Collateral junior and/or subordinate to the DIP Liens receives or is paid the proceeds of such DIP Collateral or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Note Purchase Agreement and termination of the commitment in accordance with the DIP Note Purchase Agreement such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Facility Providers and shall immediately turnover such proceeds for application to the DIP Obligations under the DIP Note Purchase Agreement in accordance with the DIP Note Purchase Agreement and this Interim Order until all DIP Obligations are indefeasibly paid in full in cash.

29.     *Limitation of Liability.* In determining to purchase any note under the DIP Note Purchase Agreement or in exercising any rights or remedies as and when permitted pursuant to this Order or the Note Documents, the DIP Agent, and the DIP Facility Providers shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the Note Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the

*From and after entry of a Final order,*

DIP Facility Providers, the FRN Indenture Trustee, or the holders of the Senior Secured FRNs any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

30.     *Access to Collateral.* Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Facility Providers contained in this Order or the DIP Note Purchase Agreement, or otherwise available at law or in equity, and subject to the terms of the DIP Note Purchase Agreement, upon five (5) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that a default or an Event of Default under the DIP Note Purchase Agreement or a default by any of the Debtors of any of their obligations under this Order, a violation of the terms of this Order has occurred and is continuing, the DIP Agent or the DIP Facility Providers (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor, and the DIP Agent or the DIP Facility Providers (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in either the case of subsections (i) or (ii) of this section without interference from lienholders or licensors thereunder, subject to such lienholders or licensors rights under applicable law. Nothing herein shall require the Debtors, the DIP Agent or the DIP Facility Providers to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to

35

the DIP Agent and the DIP Facility Providers in this section nor shall anything in this Order be deemed to be an assumption, assignment or rejection of any lease or license.

31. *Delivery of Documentation.* The Debtors shall deliver or cause to be delivered to the DIP Agent, counsel to the DIP Agent, or any financial advisor to the DIP Agent, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent, the DIP Facility Providers, and/or the DIP Agents' legal and financial advisors pursuant to the DIP Note Purchase Agreement.

32. *Access to Books & Records.* The Debtors will (i) keep proper books, records and accounts in accordance with GAAP as historically applied by the Debtors in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (ii) cooperate, consult with, and, subject to applicable confidentiality agreements, provide to the DIP Agent, DIP Facility Providers, FRN Indenture Trustee and/or FRN Holders all such information as required or allowed under the DIP Note Purchase Agreement, the provisions of this Order or that is afforded to any Committee and/or such Committee's respective legal or financial advisors upon written request by the DIP Agent, (iii) permit upon one (1) business days notice, representatives of the DIP Agent, DIP Facility Providers, FRN Indenture Trustee and/or the FRN Holders to visit and, subject to applicable confidentiality agreement, inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public

accountants as often as may reasonably be desired, and (iv) permit representatives of the DIP Agent, DIP Facility Providers, FRN Indenture Trustee and/or FRN Holders, subject to applicable confidentiality agreements, to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

33.    *Subsequent Reversal or Modification.* This Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Facility Providers all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agent and the DIP Facility Providers prior to the date of receipt by the DIP Agent of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Order or pursuant to the DIP Note Purchase Agreement. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agent or the DIP Facility Providers, prior to written notice to the DIP Agent of the effective date of such action, shall be governed in all respects by the original provisions of this Order, and the DIP Agent and the DIP Facility Providers shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Note Purchase Agreement with respect to all such indebtedness, obligations or liability.

34.    *No Waiver.* This Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, the DIP Facility Providers, the FRN Indenture Trustee or the FRN Holders may have to bring or be heard on any matter brought before this Court.

37

35.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

36.    *Retention of Jurisdiction.*  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code, use of cash collateral or other injunctive relief requested.

37.    *Final Hearing.*  The Final Hearing is scheduled for _February   1_____, 2011 at _10:00_ _a_.m., prevailing Eastern time, before this Court.

38.    *Final Hearing Notice.*  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Motion and interim hearing to consider the Motion, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19899, Attn: Neil Glassman, (b) Wilmer Cutler Pickering Hale and Dorr LLP, via electronic mail to Andrew Goldman (andrew.goldman@wilmerhale.com) and Dennis Jenkins (dennis.jenkins@wilmerhale.com); (c) counsel for the Consenting Noteholders and the DIP Agent, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Patrick Nash; (e) counsel for the Prepetition Agent, (f) the FRN Indenture Trustee, and (g) Office of the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Mark Kenney, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each

case to allow actual receipt by the foregoing no later than January 25, 2011 at 4:00 p.m., prevailing

Eastern time.

Dated: January 3, 2011
        Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge