# ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CONSTAR INTERNATIONAL INC., et al.,[1] | ) | Case No. 11-10109 (CSS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

## INTRODUCTION

On January 11, 2011 (the "Petition Date"), Constar International Inc., BFF Inc., DT, Inc., Constar, Inc., Constar Foreign Holdings, Inc. and Constar International U.K. Limited, as debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On the Petition Date, the Debtors filed their Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 33] together with Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 32].

---

[1] The Debtors and, where applicable, the last four digits of their respective tax identification numbers are: Constar International Inc. (XX-XXX9304), BFF Inc. (XX-XXX1229), DT, Inc. (XX-XXX7693), Constar, Inc. (XX-XXX0950), Constar Foreign Holdings, Inc (XX-XXX8591) and Constar International U.K. Limited. The address of Constar International Inc., BFF Inc., DT, Inc., Constar, Inc. and Constar Foreign Holdings, Inc. is One Crown Way, Philadelphia, Pennsylvania 19154. The address of Constar International U.K. Limited is Moor Lane Trading Estate, Sherburn in Elmet, Nr Leeds, North Yorkshire LS25 6ES, UK.

On February 22, 2011, the Debtors filed their First Amended Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 199] together with the Exhibits A through D thereto [Docket No. 200] and the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 197].[2]

On February 22, 2011, the Bankruptcy Court entered the Order (A) Approving Adequacy of the Disclosure Statement; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (C) Fixing the Administrative Expense Bar Date; (D) Fixing a Record Date for Distribution; (E) Fixing Date, Time and Place for Confirmation Hearing; and (F) Establishing Procedures for Objections to Cure Payments (the "Disclosure Statement Order") [Docket No. 206]. The Disclosure Statement Order, among other things, (i) established April 15, 2011 at 4:00 p.m. (Prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline"), (ii) established April 15, 2011 at 4:00 p.m. (Prevailing Eastern Time) as the deadline for objections to confirmation of the Plan (the "Objection Deadline"), (iii) established February 22, 2011 as the record date for purposes of determining which holders of claims are entitled to vote on the Plan and are entitled to receive the Solicitation Materials (the "Record Date"), (iv) established the administrative expense bar date as the first business day that is thirty (30) days after the Effective Date of the Plan (the "Administrative Expense Bar Date") and (v) scheduled a hearing commencing on April 25, 2011 at 10:00 a.m. (Prevailing Eastern Time) to consider confirmation of the Plan and objections thereto (the "Confirmation Hearing").

---

[2]     For purposes of this order, references to the "Plan" shall mean the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code dated February 22, 2011 [Docket No. 197], as modified by the First Modification to the Debtors' First Amended Joint Plan of Reorganization [Docket No. 266] and as it may be further amended, modified or supplemented from time to time. Unless otherwise noted, capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

On March 14, 2011, the Debtors filed the First Modification to the Debtors' First Amended Joint Plan of Reorganization [Docket No. 266] and the Notice of Modifications to Disclosure Statement and Notice of Unimpaired Voting Status [Docket No. 268].

On March 18, 2011, the Debtors' Voting Agent, Kurtzman Carson Consultants LLC ("Kurtzman"), transmitted solicitation materials (the "Solicitation Materials") in accordance with the Disclosure Statement Order, as attested to in the Affidavit of Service of Kurtzman filed on March 25, 2011 (the "Solicitation Affidavit") [Docket No. 292] and the other affidavits set forth below.

On April 6 and 7, 2011, Kurtzman transmitted notice of the Confirmation Hearing in accordance with the Disclosure Statement Order, as attested to in the Supplemental Affidavit of Service filed on April 13, 2011 [Docket No. 333] (the "Supplemental Affidavit").

On April 11, 2011, this Court entered the Order Regarding Revised Schedule for Confirmation Hearing and Related Deadlines (the "Rescheduling Order") [Docket No. 319]. The Rescheduling Order, among other things, (i) moved the Voting Deadline to May 10, 2011 at 4:00 p.m. (Prevailing Eastern Time); (ii) rescheduled the Confirmation Hearing on May 20, 2011 at 3:00 p.m. or such later date as may be scheduled by this Court; and (iii) moved the Objection Deadline to May 10, 2011 at 4:00 p.m. (Prevailing Eastern Time).

On April 11, 2011, Kurtzman transmitted the Notice of Rescheduled Hearing to Consider Confirmation of Debtors' Joint Chapter 11 Plan and Related Voting and Objection Deadlines, as attested to in the Affidavit of Service filed on April 14, 2011 [Docket No. 334] (the "First Rescheduling Affidavit of Service").

On April 11, 2001, Kurtzman transmitted the Rescheduling Order and the Notice of Order Regarding Revised Schedule for Confirmation Hearing and Related Deadlines, as attested

to in the Affidavit of Service filed on April 18, 2011 [Docket No. 341] (the "Second Rescheduling Affidavit of Service").

On April 12, 2001, Kurtzman transmitted the Notice of Hearing to Consider Confirmation of Debtors' First Amended Joint Chapter 11 Plan and Related Voting and Objection Deadlines and the Notice of Unimpaired Non-Voting Status for Debtors' First Amended Joint Chapter 11 Plan, as attested to in the Supplemental Affidavit of Service filed on April 19, 2011 [Docket No. 342] (the "First Supplemental Rescheduling Affidavit of Service").

On April 21, 2001, Kurtzman transmitted the Notice of Order Regarding Revised Schedule for Confirmation Hearing and Related Deadlines, as attested to in the Supplemental Affidavit of Service filed on April 26, 2011 [Docket No. 364] (the "Second Supplemental Rescheduling Affidavit of Service").

The Debtors published the Publication Confirmation Hearing Notice on March 21, 2011 in The Wall Street Journal and on March 22, 2011 in The Times (of London), as attested to in the affidavits of publication filed on April 26, 2011 and April 27, 2011, respectively [Docket Nos. 365 and 366] (the "Publication Affidavits").

On May 5, 2011, the Debtors filed the Plan Supplement (the "Plan Supplement") [Docket No. 375], containing forms of the following: (i) the Exit Facility Credit Agreement (Exhibit A-1); (ii) the Rollover Credit Agreement (Exhibit A-2); (iii) the Rollover Note Purchase Agreement (Exhibit A-3); (iv) the Shareholder Credit Agreement (Exhibit A-4); (v) the Shareholder Note Purchase Agreement (Exhibit A-5); (vi) Form of Annexes to Rollover Credit Agreement, Rollover Note Purchase Agreement, Shareholder Credit Agreement, and Shareholder Note Purchase Agreement (Exhibit A-6); (vii) the Term Intercreditor Agreement (Exhibit A-7); (viii) the Shareholder Facility Intercreditor and Collateral Agency Agreement (Exhibit A-8); (ix) the

Roll-Over Facility Intercreditor and Collateral Agency Agreement (Exhibit A-9); (x) the Description of Taxable Purchase (Exhibit B-1); (xi) the LLC Agreement for Constar International Holdings LLC (Exhibit B-2); (xii) the Unitholders Agreement for Constar International Holdings LLC (Exhibit B-3); (xiii) the Form of Certificate of Incorporation for Corporate Holding Companies (Exhibit B-4); (xiv) the Form of Bylaws for Corporate Holding Companies (Exhibit B-5); (xv) Constar International LLC Agreement (Exhibit B-6); (xvi) Form of Second Amended and Restated Certificate of Incorporation for Delaware Subsidiaries (Exhibit B-7); (xvii) Articles of Amendment for Constar, Inc. (Exhibit B-8); (xviii) Exchange Agreement between Constar International Inc. and Constar Group, Inc. (Exhibit B-9); (xix) the List of Executory Contracts and Unexpired Leases to be Rejected (Exhibit E); (xx) the List of Executory Contracts and Unexpired Leases to be Assumed (Exhibit F); (xxi) the Schedule of Cure Amounts (Exhibit G); and (xxii) the List of Retained Causes of Action (Exhibit H).

No timely objections to confirmation of the Plan were filed or served.

On May 16, 2011, the Debtors filed the Declaration of Robert Q. Klamser with Respect to the Tabulation of Votes with Respect to the First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code.(the "Voting Affidavit") [Docket No. 409].

On May 18, 2011, the Debtors filed the Debtors' Memorandum of Law in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Memorandum") [Docket No. ____].

The Confirmation Hearing commenced and concluded on May 20, 2011.

NOW, THEREFORE, the Bankruptcy Court having considered the Disclosure Statement, the Solicitation Affidavit, the Supplemental Affidavit, the First Rescheduling Affidavit of

Service, the Second Rescheduling Affidavit of Service, the First Supplemental Rescheduling Affidavit of Service, the Second Supplemental Affidavit of Service, the Publication Affidavits, the Plan Supplement, the Voting Affidavit, the forms of Ballot, the Memorandum, all objections to Confirmation and all evidence proffered or adduced and the statements, arguments and objections of counsel at the Confirmation Hearing; taken judicial notice of all the papers and pleadings filed in these Chapter 11 Cases; overruled any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved or withdrawn; it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.     Findings and Conclusions.

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.     Jurisdiction and Venue**

2.     Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**C.     Eligibility for Relief**

3.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of these Chapter 11 Cases**

4.     On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. By prior order of the Bankruptcy Court, these Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.     Judicial Notice**

5.     The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of these Chapter 11 Cases and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all

pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of these Chapter 11 Cases, including but not limited to the hearings to consider the adequacy of the Disclosure Statement.

6. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are overruled on the merits.

## F. **Modifications to the Plan**

7. On March 14, 2011, the Debtors filed the First Modification to the Debtors' First Amended Joint Plan of Reorganization [Docket No. 266] (the "First Modification"). The Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 197], as modified by the First Modification, constitutes the "Plan." The First Modification does not adversely affect the treatment of any Claims or Equity Interests in the Debtors under the Plan. The First Modification neither requires additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

## G. **Burden of Proof**

8. As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for the Confirmation.

## H. **Solicitation and Notice**

9. The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and

regulations promulgated thereunder, the "Securities Act") and applicable state and local securities laws, and no other non-bankruptcy law applies to the solicitation. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws and regulations. All procedures used to distribute Ballots to the applicable Holders of Class 5—Secured Floating Rate Note Claims and Class 6—General Unsecured Claims and to tabulate the Ballots were fair and reasonable and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and all other applicable rules, laws and regulations. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for the Classes of Claims entitled to vote to accept or reject the Plan.

I.      **Transmittal and Mailing of Materials; Notice**

        10.     The Debtors have given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rules 2002 and 3017(d). The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan was transmitted to all holders of Claims entitled to vote to accept or reject the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan. The Solicitation Materials and solicitation procedures were adequate and sufficient under the circumstances of these Chapter 11 Cases and comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018. The Solicitation Materials were transmitted and served in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order and all other applicable rules, laws, and regulations governing notice, disclosure and solicitation in connection

with the Plan and Disclosure Statement, and such transmittal and service were adequate and sufficient under the circumstances. The Debtors published the Publication Confirmation Hearing Notice once in each of The Wall Street Journal and The Times (of London) on March 21, 2011, and March 22, 2011, respectfully, in substantial compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavits. Adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order was timely provided and was given in compliance with the Bankruptcy Code and Bankruptcy Rules and provided due process and an opportunity to appear and be heard to all parties in interest, and no other or further notice is or shall be required.

**J.    Voting Affidavit**

11.    All procedures used to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and all other applicable rules, laws, and regulations. As evidenced by the Voting Affidavit, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

12.    As evidenced by the Voting Affidavit, Class 5—Secured Floating Rate Note Claims and Class 6—General Unsecured Claims voted to accept the Plan pursuant to 11 U.S.C. §1126.

13.    Creditors in Class 1–Secured Credit Facility Claims, Class 2–Senior Tax Claims, Class 3–Other Secured Claims, Class 4–Other Priority Claims, and Class 6A—Convenience Claims are Unimpaired and deemed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

14.     Creditors in Class 7—Section 510(b) Claims, Class 8—Intercompany Claims, Class 9—Old Constar Equity Interests, and Class 10—Constar Consolidated Subsidiary Stock Interests (collectively, the "Rejecting Classes") are Impaired, are not receiving any property under the Plan, are deemed to reject the Plan and need not vote to accept or reject the Plan.

**K.     Plan Supplements**

15.     The Plan Supplement complies with the terms of the Plan, and the filing and notice thereof was good and proper in accordance with the Bankruptcy Code and the Bankruptcy Rules and no other or further notice is or shall be required.  The Debtors are authorized to modify the Plan Supplement following entry of the Confirmation Order in accordance with the terms of the Plan.

**L.     Bankruptcy Rule 3016**

16.     The Plan, including but not limited to the First Modification, is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement and the Notice of Modifications to Disclosure Statement and Notice of Unimpaired Voting Status [Docket Nos. 268 and 269] with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**M.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

17.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

    **1.     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

18.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

       (i)     <u>Section 1122 and 1123(a)(1)—Proper Classification</u>

19.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests into eleven Classes, based on differences in the factual nature, legal nature, or priority of such Claims and Equity Interests (other than DIP Facility Claims, Administrative Claims, and Priority Tax Claims, which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications are not done for any improper purpose, and the existence of such Classes under the Plan does not unfairly discriminate between or among Holders of Claims or Equity Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

20.    As a result thereof, the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

       (ii)    <u>Section 1123(a)(2)—Specification of Unimpaired Classes</u>

21.    Article III of the Plan specifies that Claims in Classes 1, 2, 3, 4, and 6A are Unimpaired under the Plan.

22.    Additionally, Article II of the Plan specifies that Administrative Claims, DIP Facility Claims, and Priority Tax Claims are Unimpaired, although these Claims are not classified under the Plan.

23.    As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

(iii)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes

24.     Article III.B of the Plan designates Classes 5 and 6 as impaired and specifies the treatment of Claims in those Classes under the Plan.  As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

(iv)     Section 1123(a)(4)—No Discrimination

25.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides for the same treatment of each Claim or Equity Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

(v)     Section 1123(a)(5)—Additional Plan Provisions

26.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV of the Plan, and various other provisions of the Plan and the various agreements and documents in the Plan Supplement specifically provide adequate and proper means for the Plan's implementation, including: (a) the continuation of the corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors; (b) the amendment of the certificates of incorporation, charter, and bylaws of the Debtors as required to be consistent with the provisions of the Plan and the Bankruptcy Code; (e) the cancellation of the Old Constar Equity Interests; (f) the authorization for the Reorganized Debtors' entry—at their discretion and election—into the Exit Facility and the execution of the Exit Facility Credit Agreement and the other Exit Facility Documents; (g) the authorization and issuance or distribution of the Roll-Over Notes, the Shareholder Notes, the New Common Stock, the New Overage Securities, and the execution of related documents; (h) the substantive consolidation of Constar and the Consolidated Constar Entities for purposes of voting on, confirmation of, and distributions under the Plan; (i) the sources of Cash for

distributions under the Plan; and (j) establishment of the Professional Fee Escrow Account, which will ensure the payment of all Accrued Professional Compensation awardable and allowable under sections 328, 330(a), or 331 of the Bankruptcy Code. Moreover, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan. As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

(vi)    Section 1123(a)(6)—Voting Power of Equity Securities

27.    Article IV.L.1 of the Plan provides that the New Certificates of Incorporation of each of the Reorganized Debtors will prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code without any further actions by the stockholders or directors of the Debtors or the Reorganized Debtors. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii)    Section 1123(a)(7)—Selection of Officers and Directors

28.    Article IV.L of the Plan contains provisions with respect to the manner of selection of officers and directors of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7). As a result, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

(viii)    Section 1123(b)—Discretionary Contents of the Plan

29.    The Plan contains various provisions that may be construed as discretionary, but are not required for Confirmation under the Bankruptcy Code. These Plan provisions are appropriate, in the best interests of the Debtors and their Estates, and not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a)

the assumption or rejection of executory contracts and unexpired leases; (b) the Reorganized Debtors' retention of Causes of Action that the Debtors had or had power to assert immediately prior to the Effective Date, whether directly or derivatively; and (c) releases of various persons and entities, exculpation of various persons and entities with respect to actions related to or taken in furtherance of these Chapter 11 Cases, and injunctions against certain actions against the Debtors, their Estates, and their properties. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

(a)     Section 1123(b)(1)-(2)—Claims and Executory Contracts

30.     Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, the Claims in Classes 1, 2, 3, 4 and 6A, and Article V of the Plan provides for the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases of the Debtors not previously assumed, assumed or assigned, or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of the Bankruptcy Court.

31.     The Plan constitutes a motion to reject the executory contracts and unexpired leases of the Debtors that are designated to be rejected as set forth on Exhibit E to the Plan Supplement. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome to the Estates and rejection thereof is in the best interests of the Estates.

32.     The Plan also constitutes a motion to assume all other executory contracts and unexpired leases of the Debtors. Each executory contract or lease to be assumed pursuant to the Plan is beneficial to the Estates and the assumption thereof is in the best interests of the Estates. The cure amounts for each such assumed executory contract is as set forth in Exhibit G to the Plan Supplement.

(b)     Section 1123(b)(3)—Release, Exculpation, Injunction, Discharge, and Preservation of Claims Provisions

33.     Releases by the Debtors. The releases and discharges of claims and Causes of Action by the Debtors described in Article VIII of the Plan (or as modified herein) pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment. Pursuing any such claims or Causes of Action is not in the best interest of the Debtors' estates' various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The releases by the Debtors are: (a) in exchange for good and valuable consideration provided by the released parties; (b) a good-faith compromise and settlement of the Causes of Action released; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors or any Holder of a Claim or Equity Interest that would have been legally entitled to assert any Cause of Action on behalf of any of the Debtors or the Estates from asserting any Cause of Action released by the Debtors.

34.     Releases by Holders of Claims and Equity Interests. The releases of Claims and Causes of Action by Holders of Claims and Equity Interests described in Article VIII of the Plan provide for the release by Holders of Claims and Equity Interests that vote in favor of the Plan and, therefore, are consensual. The Ballots explicitly set forth that a vote to accept the Plan constitutes an acceptance and assent to the releases set forth in the Plan and directed parties to Article VIII of the Plan for further information about the release provisions. Thus, those Holders of Claims voting to accept the Plan were given due and adequate notice that they would be granting the releases by acting in such a manner. Such releases constitute an integral part of the Plan and are: (a) in exchange for good and valuable consideration provided by the released

parties; (b) a good-faith compromise and settlement of the Causes of Action released; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Cause of Action released by Holders of Claims and Equity Interests. The breadth of such releases is necessary to the Plan and bears a reasonable relationship to the protection of the Debtors' estates.

35. _Injunction_. The injunction provisions set forth in Article VIII.H of the Plan are necessary to preserve and enforce the releases granted by the Plan in Articles VIII.E and VIII.G, and the discharge pursuant to Article VIII.A are narrowly tailored to achieve that purpose.

36. _Exculpation_. The exculpation provisions set forth in Article VIII.F of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct.

37. _Compliance with Bankruptcy Code_. Each of the discharge, release, indemnification, and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates, and their Creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing on these Chapter 11 Cases is sufficient to support the discharge, release, exculpation, and injunction provisions contained in Article VIII of the Plan.

38. <u>Preservation of Claims and Causes of Action</u>. Article IV.P of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests.

2. **<u>Section 1129(a)(2)—Compliance of the Debtors and Others With the Applicable Provisions of the Bankruptcy Code</u>**

39. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, including without limitation sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 2002, 3016, 3017, 3018, and 3019. Specifically:

    a. The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

    b. The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court.

    c. The Debtors have complied with all solicitation and disclosure requirements set forth in the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order governing notice, disclosure and solicitation in connection with the Plan and the Disclosure Statement.

40. The Debtors and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or

regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### 3. Section 1129(a)(3)—Proposal of Plan in Good Faith

41. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, and the process leading to its formulation. These Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of reorganizing the Debtors' ongoing business and maximizing the value of each of the Debtors. The Plan is designed to allow the Reorganized Debtors to reorganize by providing them with a capital structure that will allow them to satisfy their obligations and maintain sufficient liquidity and capital resources to conduct their business. Therefore, the Plan has not been proposed by any means forbidden by law. Accordingly, the Plan satisfies the requirements of 1129(a)(3).

### 4. Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable

42. Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable; provided, however, that the Consenting Noteholders' Fees are Allowed Administrative Claims and will be paid on the Effective Date without the need for the filing of a proof of claim or further Bankruptcy Court approval. The Plan thereby satisfies section 1129(a)(4) of the Bankruptcy Code.

### 5. Section 1129(a)(5)—Directors, Officers, and Insiders

43. The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because the Debtors have disclosed (a) the identity and affiliations of each proposed director and officer of the Reorganized Debtors in place as of the Effective Date and (b) to the extent applicable or available, the identity of and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The method of appointment of directors and officers was consistent with the interests of Holders of Claims and Equity Interests and public policy. On the Effective Date, the operation of the Reorganized Debtors shall become the general responsibility of its New Board, subject to, and in accordance with, its New Organizational Documents.

### 6. Section 1129(a)(6)—Approval of Rate Changes

44. The Plan does not contain or provide for any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is satisfied.

### 7. Section 1129(a)(7)—Best Interests of Holders of Claims and Equity Interests

45. The liquidation analysis provided in the Disclosure Statement (the "Liquidation Analysis") and the other evidence related thereto that was proffered and/or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing establish that each Holder of a Claim or Equity Interest in an Impaired class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Estimated recoveries of each impaired Class are equal to or in excess of the recoveries estimated in a hypothetical

chapter 7 liquidation. Thus, the Plan satisfies the "best interests of creditors test" set forth in section 1129(a)(7) of the Bankruptcy Code.

8. **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

46. Classes 1, 2, 3, 4 and 6A are Unimpaired and, therefore, are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 7, 8, 9, and 10 are Impaired and are deemed to have rejected the Plan. Classes 5 and 6 have voted to accept the Plan in accordance with sections 1126(c) of the Bankruptcy Code.

47. Because the Plan has not been accepted by the Rejecting Classes, the Debtors sought Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

9. **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

48. The treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims under Articles II.B, II.C and III.B of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

10. **Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

49. As set forth in the Voting Affidavit, the Class 5—Secured Floating Rate Note Claim Holders and Class 6—General Unsecured Claim Holders have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying section 1129(a)(10) of the Bankruptcy Code in all respects.

11. **Section 1129(a)(11)—Feasibility of the Plan**

50.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors.  The evidence proffered or adduced at, or prior to, or in declarations filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, and credible; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (d) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

12. **Section 1129(a)(12)—Payment of Bankruptcy Fees**

51.    Article XIII.B of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

13. **Section 1129(a)(13)—Retiree Benefits**

52.    Section 1129(a)(13) of the Bankruptcy Code requires a Plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  Article V.F of the Plan and this Confirmation Order, as set forth more fully below, provide that, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law for the duration of the

period the Debtors have obligated themselves to provide such benefits. Therefore, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**14.** **Section 1129(a)(14)-(16)**

53. Sections 1129(a)(14)-(16) are inapplicable as the Debtors (i) have no domestic support obligations (1129(a)(14)), (ii) are not individuals (1129(a)(15)), and (iii) are for-profit businesses (1129(a)(16)).

**15.** **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class**

54. Notwithstanding the fact that the Rejecting Classes are deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) Class 5—Secured Floating Rate Note Claims and Class 6—General Unsecured Claims have voted to accept the Plan; and (b) based on the evidence proffered or adduced at, or prior to the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. No Holder of a Claim or Equity Interest junior to the Rejecting Classes will receive or retain any property on account of such junior Claim or Equity Interest. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. After entry of the Confirmation Order and upon Consummation, the Plan shall be binding upon the members of the Rejecting Classes. Therefore, the Plan is fair and equitable and satisfies the requirements of section 1129(b).

**16.** **Section 1129(c)—Only One Plan**

55. No other Plan has been filed in these Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**17. Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes**

56. No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms and the record of the Confirmation Hearing, the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**N.    Satisfaction of Confirmation Requirements**

57. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**O.    Good Faith**

58. Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.F of the Plan.

**P.    Disclosure: Agreements and Other Documents**

59. The Debtors have disclosed all material facts regarding: (a) the adoption of New Organizational Documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the Exit Facility; (d) the distribution of Cash; (e) the issuance of the Roll-Over Notes, the Shareholder Notes, the New Common Stock, and the New Overage Securities; (f) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors; and (g) the

adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing.

## Q.    Substantive Consolidation

60.    The evidence proffered and adduced at the Confirmation Hearing and all other evidence on the record before the Bankruptcy Court in these Chapter 11 Cases establishes that that (a) Constar and the Consolidated Constar Entities share a common management team, with overlapping boards of directors, and generally operate on a consolidated basis; (b) Constar was a publicly reporting company that filed consolidated financial reports with the SEC; (c) the U.S. Debtors file consolidated group income tax returns; (d) creditors' generally rely on the Debtors' consolidated credit; and (e) the Debtors' going concern value arises from the Debtors' businesses continuing to operate as a single going concern enterprise. The evidence before this Bankruptcy Court establishes that (a) there is an extensive interrelationship, interdependence, and entanglement between and among Constar and the Consolidated Constar Entities that make it financially prohibitive to disentangle their affairs; (b) the time and expense necessary even to attempt to unscramble the affairs of Constar and the Consolidated Constar Entities is so substantial as to threaten the realization of any net assets for creditors; (c) consolidation will foster a net benefit among all Holders of General Unsecured Claims against Constar and the Consolidated Constar Entities; and (d) the substantive consolidation provided for in the Plan ensures the equitable treatment of all creditors of Constar and the Consolidated Constar Entities. Such evidence is persuasive and credible and has not been controverted by any other evidence. No credible evidence has been presented to demonstrate that any creditor of Constar and the Consolidated Constar Entities relied on the separate credit of one of the entities to be consolidated or that any such creditor will be prejudiced by the substantive consolidation.

**R.    Conditions to Confirmation**

61.    Each of the conditions to Confirmation set forth in Article X.A of the Plan has been satisfied or waived in accordance with the provisions of the Plan.

**S.    Implementation**

62.    All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents, have been negotiated in good faith, at arm's length, and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

63.    The restructuring shall be implemented and consummated pursuant to the Plan and all Purchase Documents, and shall be treated as a taxable sale of the assets of the Debtors to the Reorganized Debtors for United States federal income tax purposes.

**T.    Approval of Exit Facility, Roll-Over Facility, Shareholder Notes, and Purchase Documents**

64.    Each of the Exit Facility, Roll-Over Facility, Shareholder Notes, and Purchase Documents is an essential element of the Plan, and entry into the Exit Facility, Roll-Over Facility Shareholder Notes, and Purchase Documents is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors are authorized, without further approval of this Court or any other party, to execute and deliver the Exit Facility Credit Agreement and the other Exit Facility Documents, Roll-Over Facility Agreement, Shareholder Notes Indenture Documents, Purchase Documents, and all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder.

## II.     ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF

LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

### A.     Objections

65.     To the extent that any objections, reservations of rights, responses, statements, comments (or any related joinders) to Confirmation (each an "Objection," and collectively the "Objections") have not been withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, each such Objection is hereby overruled on the merits.

### B.     Findings of Fact and Conclusions of Law

66.     This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

### C.     Confirmation of the Plan

67.     The Plan and the Plan Supplement and each of their provisions are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit A.

68.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved as finalized, executed, and delivered. Without further order or authorization of the

Bankruptcy Court, subject to the requirements of the Plan and the terms and conditions of this Confirmation Order, the Debtors, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

69.     The terms of the Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order. The terms of the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan. The failure to specifically include or to refer to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such provision.

**D.      Solicitation and Notice**

70.     Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order and the Rescheduling Order, was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Notice of the Plan Supplement, and all related documents, was appropriate and satisfactory based upon the circumstances of these

Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

### E. Plan Classification Controlling

71. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

### F. Executory Contracts and Unexpired Leases

72. The Executory Contract and Unexpired Lease provisions of Article V of the Plan shall be, and hereby are, approved.

73. Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the Executory Contracts and Unexpired Leases assumed pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts and Unexpired Leases rejected pursuant to the Plan.

74. The parties to such executory contracts or unexpired leases to be assumed pursuant to the Plan were afforded with good and sufficient notice of such assumption and an opportunity to object and be heard. Except as otherwise agreed to by the Debtors and any third party in any stipulation entered into with respect to any assumed Executory Contract or Unexpired Lease (and approved by this Court), any request for payment of Cure Claims with respect to any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan in an amount different than specified in the Plan Supplement that was not filed and served on the Debtors no later than 10 days after the filing of the respective plan supplement shall be and hereby is forever barred, estopped and enjoined from asserting such Cure Claims against the Debtors, the Reorganized Debtors or their respective property, and such Cure Claims will be deemed discharged as of the Effective Date. Notwithstanding Article V of the Plan, the Debtors

shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the later of the Effective Date and the date set by any other order of the Bankruptcy Court.

75.     In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors, or their properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon Kurtzman Carson Consultants LLC, the Debtors' Court-appointed Claims agent, on or before 4:30 p.m. (Prevailing Eastern Time) on the date that is 30 days after the later of (i) the date of service of notice of the Confirmation Date, (ii) notice of modification to Exhibit E of the Plan Supplement (solely with respect to the party directly affected by such modification), or (iii) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such rejection).

## G.     Retiree Benefits

76.     Nothing in the Plan will be construed as discharging, releasing, or relieving CI, or its successor, including the reorganized CI, or any party, in any capacity, from any liability for the minimum funding requirements or statutory premiums under ERISA or the Internal Revenue Code with respect to the Pension Plan or the PBGC. The PBGC and Pension Plan will not be enjoined or precluded from seeking to enforce such liability as a result of any provision of the Plan of Reorganization or the Confirmation Order. In addition, CUK established and participated in the defined benefit pension scheme known as the Constar International UK Limited Retirement Benefits Scheme (the "UK Pension Scheme") in order to provide pensions

and other benefits for its employees. Under the Plan, the UK Pension Scheme will not be terminated, and the reorganized CUK will assume and continue to maintain the UK Pension Scheme. Nothing in the Plan will be construed as discharging, releasing, or relieving CUK, or any successor, including the reorganized CUK, or any other party, in any capacity, from any liability with respect to the UK Pension Scheme. The UK Pensions Regulator and the trustees of UK Pension Scheme will not be enjoined or precluded from seeking to enforce such liability as a result of any provision of the Plan or the Confirmation Order.

## H.    **Insurance**

77.     Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are continued pursuant to this Confirmation Order.

78.     Nothing in the Plan, the Plan Supplement, or this Confirmation Order (including any provision or document that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, expanding the scope of, altering, or impairing in any respect the prepetition legal, equitable or contractual rights, obligations and defenses of the insured or insurer with respect to any of the Debtors' insurance policies and related insurance agreements under the policies, related agreements, and applicable non-bankruptcy law; and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors and Reorganized Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy and related agreements.

79.     The rights and obligations of the insured and the insurer shall be determined under the insurance policies and related agreements, including all terms, conditions, limitations

and exclusions thereof, which shall remain in full force and effect, and any applicable non-bankruptcy law.

80.     Any insurance policies issued by Zurich American Insurance Company or any of its affiliates or subsidiaries, any of their predecessors or successors (collectively, the "Zurich") and/or any related agreements between the Debtors and Zurich ("Policies and Agreements"), to the extent that they are considered executory, are assumed by the Debtors and assigned to the Reorganized Debtors. Regardless of whether the Policies and Agreements are executory or not, after the Effective Date, the Reorganized Debtors and Zurich will perform their respective obligations under the Policies and Agreements, including any that remain unperformed as of the Effective Date of the Plan, and such obligations and liabilities are not discharged or released.

## I.     Administrative Claims

81.     A holder of an Administrative Claim, other than those persons or entities listed in paragraph 27 of the Disclosure Statement Order, must file with the Bankruptcy Court and serve on the Debtors notice of such Administrative Claim by the Administrative Expense Bar Date. Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

## J.     Provisions Governing Distributions

82.     The distribution provisions of Articles VI and VII of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan. Except with respect to Secured Credit Facility Claims and Floating Rate Note Claims, the Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of such Allowed Claim; provided that neither

the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against such Holder. Notwithstanding anything in the Plan to the contrary, any such setoff shall be applied to reduce the Allowed amount of any such Claim.

## K. Procedures for Resolution of Disputed, Contingent, and Unliquidated Claims

83. The Claim resolution procedures contained in Article VII of the Plan shall be, and hereby are, approved in their entirety

84. Any and all objections to Claims in accordance with Article VII of the Plan shall be deemed timely filed if interposed on or before the date that is 180 days after the Effective Date; provided, however, that such deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtors, without notice or a hearing.

## L. Releases, Injunction, Exculpation, and Related Provisions Under the Plan

85. The releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan (or as modified herein) are hereby approved and authorized in their entirety.

86. Pursuant to Article VIII.I of the Plan, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

87. PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, FOR THE

GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES, INCLUDING: (1) THE DISCHARGE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT HERETO; AND (2) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER OFFICERS, DIRECTORS AND ADVISORS IN FACILITATING THE EXPEDITIOUS IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, EACH OF THE DEBTORS DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH DEBTOR RELEASEE AND TO EACH THIRD PARTY RELEASEE (AND EACH SUCH DEBTOR RELEASEE AND THIRD PARTY RELEASEE SO RELEASED SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE DEBTORS) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE THAT ANY OF THE DEBTORS OR THE TRUSTS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE DEBTORS OR ANY OF THEIR ESTATES, INCLUDING CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE; PROVIDED, HOWEVER, THAT

THE FOREGOING "DEBTOR RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CAUSES OF ACTION OF ANY DEBTOR: (1) AGAINST A DEBTOR RELEASEE OR A THIRD PARTY RELEASEE (OTHER THAN THE DIP AGENT, THE DIP FACILITY PROVIDERS, THE LC ISSUER, THE HOLDERS OF FLOATING RATE NOTE CLAIMS, THE FLOATING RATE NOTE INDENTURE TRUSTEE, THE SECURED CREDIT FACILITY AGENT, AND THE SECURED CREDIT FACILITY LENDERS, IN THEIR RESPECTIVE CAPACITIES AS SUCH) ARISING FROM ANY CONTRACTUAL OBLIGATIONS OWED TO THE DEBTORS; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS.

88.     PURSUANT TO BANKRUPTCY RULE 9019, THE FOREGOING "DEBTOR RELEASE," WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS; (4) FAIR, EQUITABLE AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS OR THE TRUSTS ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

89.     NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING

PARTY IS A THIRD PARTY RELEASEE) SHALL PROVIDE A FULL DISCHARGE AND RELEASE (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO THE THIRD PARTY RELEASEES AND THE DEBTOR RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING "THIRD PARTY RELEASE" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CAUSES OF ACTION OF ANY RELEASING PARTY:  (1) AGAINST A DEBTOR RELEASEE OR A THIRD PARTY RELEASEE ARISING FROM ANY CONTRACTUAL OBLIGATIONS OWED TO THE RELEASING PARTY; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS.

90.     PURSUANT TO BANKRUPTCY RULE 9019, THE FOREGOING "THIRD PARTY RELEASE," WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS; (4)

FAIR, EQUITABLE AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

**M.    Post-Confirmation Notices and Deadline for Submission of Professionals' Fees**

91.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtors shall serve the notice of Confirmation Date by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice (as defined in the Disclosure Statement Order); provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish a notice of Confirmation Date once each in The Wall Street Journal and The Times (of London). Mailing and publication of the notice of Confirmation Date in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

92.    The notice of Confirmation Date shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to any filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

93.     Within ten business days after the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date, the form of which is attached hereto as <u>Exhibit B</u> and shall serve a copy of same on those parties to executory contracts and unexpired leases of the Debtors that are designated to be rejected as set forth on Exhibit E to the Plan Supplement.

94.     Except as otherwise provided in the Plan, all final requests for payment of Claims of a Professional for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court and paid in Cash in full under the Plan within thirty (30) days after the date on which the order approving such Professional Claims becomes a final order.

95.     In accordance with Article IX.D, on the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the order of the Bankruptcy Court approving interim compensation procedures. Such funds shall not be considered property of the Reorganized Debtors. The remaining amount of Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account when such Claims are Allowed by a Bankruptcy Court order. When all Claims of Professionals have been paid in full, amounts

remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

96.    To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors within ten days of the entry of this Order. If a Professional does not provide such an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

97.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

N.    **Exit Facility, Roll-Over Facility, and Shareholder Notes**

98.    The Debtors and the Reorganized Debtors are authorized to execute and deliver all agreements, documents and instruments required to be executed and delivered in connection with the Exit Facility, the Roll-Over Facility, and the Shareholder Notes and to perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees,

expenses, losses, damages or indemnities without the need for further corporate action and without further notice to, or order, or other approval of the Bankruptcy Court. Each Holder of a DIP Facility Claim shall elect to receive either the Roll-Over Notes or the loans under the Roll-Over Facility, in each case pursuant to the Roll-Over Facility Agreement. Each Holder of a Secured Floating Rate Note Claim shall elect to receive Shareholder Notes comprised of either notes or term loans, in each case pursuant to the Shareholder Notes Indenture. The Exit Facility Credit Agreement, the Exit Facility Documents, the Roll-Over Facility Agreement, Roll-Over Notes, Shareholder Notes Indenture Documents, and related documents shall constitute the legal, valid and binding obligations of the Reorganized Debtors parties thereto, enforceable in accordance with their respective terms.

99. The Debtors and the Reorganized Debtors, as applicable, and the other persons granting any Liens and security interests to secure the obligations under the Exit Facility Documents, the Roll-Over Facility Agreement, Roll-Over Notes, Shareholder Notes Indenture Documents, and related documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

100. The Exit Facility, Roll-Over Facility, Shareholder Notes, any related agreements, and the transactions contemplated thereby are approved in their entirety and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Exit Facility, Roll-Over Facility, and Shareholder Notes shall be in full force and effect and valid,

binding and enforceable in accordance with its terms. The loans and other extensions of credit contemplated by the Exit Facility, Roll-Over Facility, and Shareholder Notes and the granting of Liens to secure such loans and other extensions of credit are approved and authorized in all respects. The granting of such Liens, the making of such loans and other extensions of credit, and the execution, consummation, and issuance of the Exit Facility, Roll-Over Facility, and Shareholder Notes shall not constitute a fraudulent conveyance or transfer under state or federal law and such Liens shall be unavoidable for all purposes.

101. On the Effective Date Reorganized Debtors are hereby authorized to enter into, perform and execute the Exit Facility Credit Agreement, including any and all amendments and modifications thereto and execute, deliver, record and/or file any other agreements, instruments, mortgages, pledges, certificates, financing statements, or documents related thereto, and are hereby authorized to enter into and perform and to take all other actions in order to consummate any and all transactions contemplated thereby. Without limiting the foregoing, Reorganized Debtors are authorized to pay, and shall pay, as and when due, all fees, indemnities, expenses, and other amounts provided under the Exit Facility Credit Agreement and the other Exit Facility Documents. The Exit Facility Credit Agreement and the other Exit Facility Documents shall constitute legal, valid, binding, and duly authorized obligations of Reorganized Debtors enforceable in accordance with their terms.

102. The Liens and security interests to be granted in accordance with the Exit Facility Credit Agreement and the other Exit Facility Documents shall be valid, binding and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the Exit Facility Documents executed by Reorganized Debtors in connection with the Exit Facility Documents. The guarantees, mortgages, pledges, liens, and other security interests

granted pursuant to or in connection with the Exit Facility Credit Agreement and the other Exit Facility Documents are granted in good faith, for legitimate business purposes, fair consideration, and reasonably equivalent value, as an inducement to the Exit Facility Lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance, fraudulent transfer, or other voidable transfer under the Bankruptcy Code or any applicable non-bankruptcy law, and shall not otherwise be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and the priorities of such liens and security interests shall be as set forth in the definitive documentation executed in connection with the Exit Facility Credit Agreement. Reorganized Debtors are authorized to make all filings and recordings and to obtain all government approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign).

103. Notwithstanding anything to the contrary in this Order or the Plan, (a) the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of any rights or remedies related to, or any other matters arising under, any or all of the Exit Facility Credit Agreement or the other Exit Facility Documents, and (b) that certain Exit Facility Commitment Letter, dated January 10, 2011, and the accompanying Fee Letter, as each was approved by order of the Bankruptcy Court, dated February 1, 2011, shall, and shall be deemed to, continue and survive in full force and effect, and shall constitute legal, valid, binding and enforceable obligations of Debtors and Reorganized Debtors and shall not be impaired, prejudiced or modified (without the prior written consent of Exit Facility Agent) at any time prior to the closing of the Exit Facility on the Effective Date.

104.    To reflect the extension of the postpetition LC Facility (the "Postpetition LC Facility") by Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as postpetition LC Issuer, to Debtors pursuant to the terms of the Letter of Credit Reimbursement and Security Agreement, dated as of February 22, 2011 (the "LC Facility Agreement"), the other Loan Documents (as defined in the LC Facility Agreement) and the LC Facility Order (as defined in the LC Facility Agreement),  notwithstanding anything to the contrary contained in this Confirmation Order or the Plan: (a) all Obligations arising under or in connection with Postpetition LC Facility shall be deemed to be a DIP Facility Claim and shall be assumed by Reorganized Debtors and become a part of the Obligations due and owing under the Exit Facility, (b) Wells Fargo, in its capacity as postpetition LC Issuer, shall be deemed included within the definition of "Third Party Releasees" for purposes of Article VIII of the Plan, and (c) the LC Facility Agreement and the LC Facility Order, and all of the claims, liens, rights, priorities, protections and securities afforded to Wells Fargo thereunder, shall each remain in full force and effect, and shall constitute, and continue to constitute, the legal, valid, binding, and enforceable Obligations to Debtors and shall not be prejudiced, impaired, or modified in any way (without the prior written consent of Wells Fargo) at any time prior to the Effective Date.

## O.    Officers and Directors of the Reorganized Debtors

105.    All directors of the Debtors serving immediately prior to the Effective Date shall be deemed to have resigned as of the Effective Date. The members of the New Board of each of the Debtors shall be as announced on the record at the Confirmation Hearing.

106.    Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Bankruptcy Court approves as consistent with the interests of creditors and interest holders and with public policy the selection, election, and/or continuance, as the case may be, of these individuals; provided, however, that nothing set forth in the Plan shall prevent any of the foregoing

individuals from resigning or from being removed or replaced as an officer or director without further order of the Bankruptcy Court.

107.    On the Effective Date, the operation of the Reorganized Debtors shall become the general responsibility of the New Board, subject to, and in accordance with, the New Organizational Documents.

**P.     New Employee Agreements**

108.    On the Effective Date, Reorganized Constar shall enter into the New Employee Agreements.

**Q.     Vesting of Assets**

109.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens (a) granted to secure the Exit Facility and Claims pursuant to the DIP Facility that by their terms survive termination of the DIP Facility, and (b) granted to secure the Roll-Over Facility).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**R.     Amendment of Organizational Documents**

110.    On the Effective Date, or as soon thereafter as practicable, the Debtors shall file their New Organizational Documents (in substantially the form set forth in the Plan Supplement),

as required or deemed appropriate, with the appropriate entities in their respective jurisdictions of incorporation or establishment.

## S.     Cancellation of Securities and Agreements

111.     On the Effective Date, except to the extent provided otherwise in the Plan, the Old Constar Equity Interests, the Floating Rate Note Indenture, the Floating Rate Notes, and the Secured Credit Facility, together with all related notes, Certificates, security agreements, mortgages, pledges, indemnities, collateral assignments, undertakings, guaranties, and other instruments and documents, shall no longer be outstanding, shall be canceled, retired, and deemed terminated, and shall cease to exist, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code.

112.     Notwithstanding the foregoing, the provisions of the Floating Rate Note Indenture governing the relationships of the Floating Rate Note Indenture Trustee and the holders of notes, including, without limitation, those provisions relating to distributions, the Floating Rate Note Indenture Trustee's rights to payment, liens on property to be distributed to holders of such notes, and the Floating Rate Note Indenture Trustee's rights of indemnity from the holders of the Floating Rate Notes, if any, shall not be affected by the Plan, Confirmation or the occurrence of the Effective Date.

113.     Nothing herein affects the Floating Rate Note Indenture Trustee's rights pursuant to the Floating Rate Note Indenture and applicable non-bankruptcy law to assert liens on any distributions hereunder to the holders of the notes issued pursuant to such Floating Rate Note Indenture, to secure payment of its fees and expenses.  If the Floating Rate Note Indenture Trustee does not serve as disbursing agent with respect to distributions to its respective holders, then the funds distributed to any such disbursing agent shall be subject to the lien of the Floating Rate Note Indenture Trustee under the Floating Rate Note Indenture.

## T.    Issuance of Debtors' Plan Securities

114.    On the Effective Date, Reorganized Constar shall issue all of the Roll-Over Notes pursuant to the Roll-Over Facility Agreement. The Roll-Over Notes shall be guaranteed by each of the Reorganized Debtors (other than Reorganized Constar). Each Holder of a DIP Facility Claim shall elect to receive either the Roll-Over Notes or the loans under the Roll-Over Facility, in each case pursuant to the Roll-Over Facility Agreement. The issuance of the Roll-Over Notes by Reorganized Constar and the guaranty of the Roll-Over Notes by each of the Reorganized Debtors (other than Reorganized Constar) are authorized without the need for further corporate action.

115.    On the Effective Date, Reorganized Constar shall issue all of the Shareholder Notes pursuant to the Shareholder Notes Indenture. The Shareholder Notes shall be guaranteed by each of the Reorganized Debtors (other than Reorganized Constar). Each Holder of a Secured Floating Rate Note Claim shall elect to receive Shareholder Notes comprised of either notes or term loans, in each case pursuant to the Shareholder Notes Indenture. The issuance of the Shareholder Notes by Reorganized Constar and the guaranty of the Shareholder Notes by each of the Reorganized Debtors (other than Reorganized Constar) are authorized without the need for further corporate action.

116.    On the Effective Date or as soon thereafter as practicable, Reorganized Constar shall issue or reserve for issuance all of the New Common Stock and New Overage Securities. The New Common Stock and New Overage Securities shall represent all of the Equity Interests in Reorganized Debtor as of the Effective Date and shall be issued to Holders of Claims as provided in this Plan, subject to dilution on account of the Management Incentive Plan (if any). The issuance of the New Common Stock and New Overage Securities by Reorganized Constar is authorized without the need for further corporate action and all of the shares of New Common

Stock and New Overage Securities issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. Distributions of New Common Stock and New Overage Securities will only be made through broker accounts via electronic issuance of the shares, and Reorganized Constar will not issue separate stock certificates.

**U.    Taxable Sale**

117.    The Debtors and the Reorganized Debtors are authorized to implement and consummate the restructuring pursuant to the Plan and all Purchase Documents and are authorized to execute and deliver all Purchase Documents and to perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities without the need for further corporate action and without any further Bankruptcy Court approval. The Purchase Documents and any related documents shall constitute the legal, valid and binding obligations of the Debtors and Reorganized Debtors parties thereto, enforceable in accordance with their respective terms.

118.    The Purchase Documents, any related agreements, and the transactions contemplated thereby are approved in their entirety, and, on the Effective Date, shall be consummated. Such transactions shall be treated as a taxable sale of the assets of the Debtors to the Reorganized Debtors for United States federal income tax purposes. The sale and purchase of all assets of the Debtors pursuant to the Plan and the Purchase Documents are approved and authorized in all respects, shall not constitute a fraudulent conveyance or transfer under state or federal law, and shall be unavoidable for all purposes.

**V.    Exemption from Securities Laws**

119.    The offering, issuance, and distribution of any Securities contemplated by the Plan and any and all settlement agreements incorporated herein, including the New Common Stock and New Overage Securities, shall be exempt from, among other things, the registration

requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, any Securities contemplated by the Plan and any and all settlement agreements incorporated therein, including the New Common Stock and New Overage Securities, will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

## W.   **Exemptions from Taxation**

120.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the New Common Stock, the New Overage Securities, the Exit Facility, the Roll-Over Notes, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

121. Section 346 of the Bankruptcy Code shall apply to any taxes that may potentially result from, or may be related to, the events, transactions and occurrences of these Chapter 11 Cases, and, in particular, pursuant to section 346(j) of the Bankruptcy Code, no state or local tax imposed on, or measured by, income shall be imposed on the Debtors or the Reorganized Debtors, including, but not limited to, franchise taxes to the extent that any such franchise taxes are measured by book or taxable income of the Debtors or the Reorganized Debtors as a result of the forgiveness or discharge of indebtedness of the Debtors arising from the Confirmation and Consummation of the Plan, including, but not limited to, undertaking the transactions contemplated by the Plan, or any provision of the Plan or this Confirmation Order.

## X.  LLC Agreement and Unitholders Agreement for Constar International Holdings LLC

122. The LLC Agreement for Constar International Holdings LLC filed as Exhibit B 2 to the Plan Supplement and the Unitholders Agreement for Constar International Holdings LLC filed as Exhibit B-3 to the Plan Supplement, any related agreements, and the rights and obligations contemplated thereby are approved in their entirety.  On the Effective Date or as soon thereafter as practicable, the Debtors shall enter into and deliver such agreements, in substantially the form included in the Plan Supplement and in form and substance acceptable to the Consenting Noteholders, to each entity or person that is intended to be a party thereto and such agreement shall be deemed to be valid, binding and enforceable in accordance with its respective terms.  On and after the Effective Date, each person or entity that holds or receives New Common Stock shall be deemed to be bound by such agreements.

## Y.  Effectiveness of All Actions

123. Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation

Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, members, or stockholders of the Reorganized Constar or the other Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**Z.** **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

124. Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law, and any comparable provision of the business corporation laws of any other state or Governmental Entity, each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the Exit Facility, the Roll-Over Facility, the Shareholders Notes, the Purchase Documents and any other Plan and Plan Supplement documents, and all documents, instruments, and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.

125. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Reorganized Debtors, including, without limitation, the authorization to enter into the Exit Facility and to issue or cause to be issued the Roll-Over Notes, the Shareholder Notes, the New Common Stock, the New Overage Securities, the effectiveness of the New Organizational Documents, the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors pursuant to the Plan and the Plan Supplement, and the authorization and approval of the New Employee Agreements, shall be in effect from and after the Effective Date

pursuant to the applicable general corporation law of the states and jurisdictions in which the Debtors or the Reorganized Debtors are incorporated, without any requirement of further action by any stockholder or directors of the Debtors or Reorganized Debtors. On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall, if required, file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business laws of each such jurisdiction.

126.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or Consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

## AA.    **Substantive Consolidation**

127.    Subject to the occurrence of the Effective Date, Constar and the Consolidated Constar Entities shall be deemed consolidated for purposes of voting on, confirmation of, and distributions under the Plan; provided, however, each of Constar and the Consolidated Constar Entities retain its current legal form, and the corporate structure of Constar and the Consolidated Constar Entities shall be the same after the Effective Date as before the Effective Date, in each case, except as otherwise provided or permitted in the Plan or in this Confirmation Order. On and after the Effective Date, (i) no distributions shall be made under the Plan on account of Intercompany Claims among Constar and the Consolidated Constar Entities that are not reinstated, (ii) all guaranties by Constar and the Consolidated Constar Entities of the obligations of Constar or any of the Consolidated Constar Entities shall be eliminated so that any Claim

against Constar or any of the Consolidated Constar Entities and any guarantee thereof executed by Constar or any of the Consolidated Constar Entities and any joint or several liability of any of Constar or the Consolidated Constar Entities shall be deemed to be one obligation of Constar and the Consolidated Constar Entities, and (iii) each and every Claim filed or to be filed against Constar and the Consolidated Constar Entities shall be deemed filed against Constar and the Consolidated Constar Entities, and shall be deemed one Claim against and obligation of Constar and the Consolidated Constar Entities.

## BB.  **Retention of Jurisdiction**

128.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

b.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c.    Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under  any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases

to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

d. Ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

e. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

f. Adjudicate, decide, or resolve any and all matters related to retained Causes of Action;

g. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

h. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

i. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

j. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

k. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

l. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

m. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid pursuant to Article VI.I.1;

n. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

o. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement (other than the Exit Facility Credit Agreement and any documents related thereto);

p. Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

q. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

r. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

s. Determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

t. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

u. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

v. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

w. Enforce all orders previously entered by the Bankruptcy Court; and

x. Hear any other matter not inconsistent with the Bankruptcy Code.

## CC. Effect of Conflict Between Plan and Confirmation Order

129. If there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

## DD. **Authorization to Consummate**

130.    The Plan shall not become effective unless and until the conditions set forth in Article X.B of the Plan have been satisfied or waived pursuant to Article X.C of the Plan. The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver of the conditions precedent to Consummation set forth in Article X of the Plan.

131.    If Consummation of the Plan does not occur, then the provisions of Article X.E of the Plan shall govern.

## EE. **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent**

132.    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

## FF. **Record Closed**

133.    The record of the Confirmation Hearing is closed.

## GG. **Binding Effect; Successors and Assigns**

134.    Subject to Article X.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, on and after the Confirmation Date but subject to the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and bind the Debtors, the Reorganized Debtors, and any and all Holders of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interests of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a distribution under the Plan, and all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity

acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## HH.  Governing Law

135.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

## II.  Discharge

136.     Upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan (including, (a) that any of the Debtors' obligations under the DIP Facility that are not paid in Cash in full on or prior to the Effective Date as required under the Plan are not discharged, (b) that any of the Debtors' obligations under the LC Facility that are not paid in Cash in full on or prior to the Effective Date as required by the LC Facility Agreement are not discharged, and (c) that any of the Debtors' obligations under the Executory Contracts and Unexpired Leases that are assumed pursuant to Article V of the Plan (other than Cure Claims determined and paid pursuant to Article V) are not discharged), each Holder (as well as any trustees and agents on behalf of each Holder) of a Claim or Equity Interest, and any Affiliate of such Holder shall be deemed to have

forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

**JJ.** **Substantial Consummation**

137. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**KK.** **Payment of Statutory Fees**

138. All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**LL.** **Reversal**

139. If any of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

**MM.** <u>**Final Order**</u>

140.    Notwithstanding anything in Bankruptcy Rule 3020(e) to the contrary, this Order

shall constitute a Final Order and the period in which an appeal must be filed shall commence

upon the entry hereof.

IT IS SO ORDERED.

Date: _20ᵗʰ d̲ ̲M̲ay̲ , 2011_
Wilmington, Delaware

_____
United States Bankruptcy Judge